## Angerhofer Unemployment Compensation Case.
## Angerhofer, Appellant, *v.* Unemployment Compensation Board of Review.

Submitted March 23, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Wm. Vincent Mullin,* for appellant.

*Richard H. Wagner, William L. Hammond,* Special Deputy Attorney General and *T. McKeen Chidsey,* Attorney General, for appellee.

OPINION BY ROSS, J., July 23, 1948:

This is an appeal by the claimant, Edward Angerhofer, from a decision of the Unemployment Compensation Board of Review disallowing compensation on the ground that the claimant voluntarily quit work without good cause within the meaning of section 402(b) of the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended, 43 PS 802, which provides that an .employe shall be ineligible for compensation for any week "in which his unemployment is due to voluntarily leaving work without good cause".[1]

---

[1] For able and comprehensive discussion of "good cause" see *Sturdevant Unemployment Compensation Case,* 158 Pa. Superior Ct. 548, 45 A. 2d 898.

Claimant was employed as a "piecer" at approximately 95 cents an hour for a 44-hour week. The work of a "piecer" consists of tending a spinning machine, called a "mule", which pulls the yarn from a frame, twists it and wraps it around cones, spindles or spools. The "piecer" removes the cones or spindles as they become filled, replenishes the mule with the yarn and pieces the yarn whenever it breaks. The claimant was a member of a five-man crew operating two spinning machines and, to replace a sick employe in another department, one of the members of this crew was temporarily transferred and for about three weeks the crew operated as a four-man unit. At the end of this three-week period the claimant, contending that he was doing "two men's work", quit his employment with Sykes Brothers, Inc., in Philadelphia because the employer refused to pay him for "two men's work", or double wages.

The referee in disallowing compensation made, inter alia, the following finding of fact: "2. The claimant was a piecer in a spinning mill and on occasions, when a fellow employe was absent, was requested to help to do the work of the person remaining away from work, along with the rest of the men who were present. Claimant felt that he was performing the work of two men and asked his employer to pay him for the work of two men. The employer explained [2] the situation to the claimant but the claimant, nevertheless, walked off the job and did not return thereafter."

The Board of Review affirmed the referee's findings and made the following additional finding: "The claimant was not required to do the work of two men but was

[2] Sykes testified: "The Superintendent came in and told me that this man insisted that he was doing two men's work and he wanted two men's wages. I said to bring him down and I would talk to him. He came into the office and I explained to him that he was not entitled to it; that he was not doing two men's work and naturally we would not pay him for two men's work; that no one ever got paid when someone else was out and all pitched in."

expected to join with the rest of the crew to keep the machines operating when any of the crew members were absent. The claimant was paid on an hourly basis for the time actually worked and was not asked to do more work than his fellow employes. . . .''

The claimant's sole complaint—his only reason for quitting according to his own testimony (*"I refused to work unless I got paid for two men's work"*)—was the refusal of his employer to pay him double wages. This complaint was based upon his contention that he was doing the work of two men—a strictly factual question found against him by the triers of fact.

The board's findings of fact are supported by evidence that is real and substantial and are binding upon us. Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, section 510, 43 PS 830. *D'Yantone Unemployment Compensation Case*, 159 Pa. Superior Ct. 15, 46 A. 2d 525.

It is in evidence that the claimant "was not doing two men's work; he was not even doing his own; he would not help when someone was out"; and that the claimant "was not doing his share of the work". According to the testimony, it was the custom of the shop observed by all who work there that "if one person is absent, everyone gets together and gets the work out". It is in evidence that if one of the five-man unit was absent, the others "might do a little more than they would if the other man were there" but that neither the claimant "nor anyone else can do two men's work. The production suffers because of it", and that none of the other men objected to the "so called extra work" and that none of them asked for double wages. There is no evidence in the record that there was any change in the claimant's working conditions that would justify his demand for double wages or even increased remuneration and he was not required to work any "extra hours".

The claimant *for the first time* now argues that he quit work because to continue in his employment would

cause him to violate an agreement between the employer and the plant union. This obviously is an afterthought, specious and without merit. There is no evidence in the record to show the breach of any agreement or to show that the claimant in any way relied upon any agreement as a basis for his demand for double wages or as a reason for quitting. In fact, his own testimony shows that he quarreled with the officers of the union because they would not support him in his demand for "two men's pay".

The record clearly supports the decision of the board denying compensation on the ground that the claimant voluntarily quit his employment without good cause.

Decision affirmed.